IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| REBECCA ANN SCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-3078-S-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Rebecca Ann Schell petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The administrative law judge ("ALJ") found Plaintiff had multiple severe impairments, but retained the residual functional capacity ("RFC") to perform work as a production worker-patcher or touch-up screener. The ALJ thus found her not disabled.

As explained below, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is therefore AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed the pending applications in May 2008, alleging a disability onset date of August 15, 2006. The Commissioner denied her applications at the initial claim level. The ALJ heard her case but issued an unfavorable decision. The Appeals Council remanded the claim to

the ALJ with instructions. The ALJ again issued a decision finding that Plaintiff was not disabled. This time, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

## Discussion

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). This five-step process considers whether: (1) the claimant is employed; (2) she is severely impaired; (3) her impairment

is, or is comparable to, a listed impairment; (4) she can perform past relevant work; and (5) she can perform any other kind of work. *Andrews*, 791 F.3d at 928.

At Step Four, the ALJ assessed an intricate RFC for Plaintiff. In relevant part, it reads,

> [She] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except . . . she can have no direct contact with the public; contact with coworkers and supervisors would be limited to no more than occasionally; she cannot perform highly complex jobs, jobs which require analyzing multiple factors to make a decision, which affects her ability to work with changes in a routine work setting; her ability to grip and grasp involving wrist muscles and handle, finger, and feel can be performed frequently.

R. at 19. Plaintiff argues that the ALJ erred by concluding that she had the RFC to: (1) frequently reach, handle, finger, or feel with her left arm; and (2) occasionally interact with coworkers and supervisors and consistently sustain concentration on less than highly complex work. These arguments are without merit.

**I. Substantial evidence on the record as a whole establishes that Plaintiff can frequently use her left arm to reach, handle, finger, or feel.**

Plaintiff first challenges the ALJ's finding that she retained the RFC to "grip and grasp involving wrist muscles and handle, finger, and feel . . . frequently." R. at 19. She asserts that the condition of her left arm precludes such functions.

An ALJ must include all relevant, credible limitations in his RFC formulation. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). In particular, the ALJ must rely on the medical evidence to determine a claimant's RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "Since the ALJ must evaluate the record as a whole, the opinions of treating physicians do not automatically control." *Bernard v. Colvin*, 774 F.3d 482, 487 (8th Cir. 2014). The ALJ may discount or disregard a treating physician's opinion "where other medical assessments are supported by better or more thorough medical evidence, or where a treating

physician renders inconsistent opinions that undermine the credibility of such opinions." *Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015).

Here, substantial evidence on the record as a whole supports the ALJ's determination regarding Plaintiff's left arm. Plaintiff took an electromylogram test in October 2009 which found "moderately severe" carpal tunnel syndrome on her left side. R. at 852. As Morris Alex, M.D. ("Dr. Alex"), testified at the hearing however, despite the test's positive result, there was no sign that the carpal tunnel syndrome imposed any limitations on her ability to use her left arm. R. at 114. Subsequent medical examinations have not filled this void. Plaintiff was assessed with normal strength in the muscle groups of her upper extremities, including grip strength, in February 2008, July 2009, September 2009, January 2010, February 2010, October 2010, and November 2010. R. at 660, 812, 854, 885, 890, 911, 958, 1035, 1067. She demonstrated no restrictions in fine finger movements. *E.g.* R. at 785. She could perform a finger-nose-finger test with her left arm, albeit slowly. R. at 1313. Dr. Alex concluded, based on this record, that Plaintiff could perform light work—a more demanding category of exertion than the ALJ eventually assigned her. R. at 112. A reasonable mind could weigh the above medical evidence against the contrary evidence and agree with Dr. Alex and the ALJ. *See Lawson*, 807 F.3d at 965.

Insofar as the carpal tunnel syndrome did pose limitations, Plaintiff's physicians referred her for ameliorative surgery. R. at 947, 1071. Yet she told a nurse practitioner in October 2009 that she was "not sure she wants to proceed with surgery any time soon." R. at 872. The record contains no evidence that Plaintiff has since undergone the surgery, nor any explanation for why she did not. The ALJ fairly held this against Plaintiff. *See Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015) (finding that a decision to decline surgical intervention suggested that the

4
Case 6:15-cv-03078-DGK   Document 11   Filed 02/08/16   Page 4 of 9

claimant's condition was not disabling); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling . . . pain.").

Finally, Plaintiff's self-reports suggest that carpal tunnel syndrome does not impose restrictions on her left side. The ALJ must "determine [the] claimant's RFC based on all the relevant evidence, including [the] claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). "The ALJ is in a better position to evaluate credibility" than the district court, *Andrews*, 791 F.3d at 929, and "may disbelieve subjective reports because of 'inherent inconsistencies or other circumstances,'" *Travis*, 477 F.3d at 1042.

Plaintiff provided evasive testimony that suggests her carpal tunnel syndrome is less limiting than alleged. For example, during her second hearing the following exchange ensued:

| | |
|---|---|
| ALJ: | You talked earlier about the trouble that you're having with your hands. |
| Plaintiff: | Mm-hmm. |
| ALJ: | Are you able to open a bottle of water just fine, without any difficulty? |
| Plaintiff: | No. Sometimes I can't. Sometimes I can. So, I mean, some days are weaker than others. So— |
| ALJ: | How about folding laundry? Is that something that you can do without trouble with your hands? |
| Plaintiff: | Yeah. Probably. I mean, I never thought about it. I don't—I don't really take care of myself the way I should anymore and I don't change clothes a lot, so I don't do a lot of laundry. |
| ALJ: | Okay. |
| Plaintiff: | So I mean— |
| ALJ: | Do your hands cause you any difficulty when you're trying to wash your hair? Your hands or your neck? |
| Plaintiff: | I have trouble having my arms up. They can't be up too long. My, I mean, just sitting here, right now, my arms are going numb because of the position they're in. So, I mean, I have to move them a lot. |

R. at 57. The ALJ viewed this testimony as "very vague" and non-responsive. R. at 22. He also read Plaintiff's last answers "to indicate that her main problem with activities is that her arms become numb," not that her arms have limitations in reaching, handling, fingering, or feeling. R. at 22. Plaintiff has not challenged the ALJ's credibility findings either generally or on this specific point. The ALJ was free to judge her credibility this way and then use that finding to

5

determine her left hand's RFC was greater than alleged. *See Andrews*, 791 F.3d at 929; *Travis*, 477 F.3d at 1042; *cf. Rautio*, 862 F.2d at 179–80 (determining that inconsistent responses during medical examinations supported the ALJ's conclusion that the claimant was not credible).

Granted, Plaintiff consistently complained of pain in her left arm. But pain, absent accompanying findings of functional limitations, is not disabling. *See Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011) ("As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is."). On the above evidence, the ALJ properly assessed Plaintiff's physical RFC.[1]

## II. The ALJ's mental RFC formulation was not legally erroneous, because substantial evidence shows that Plaintiff could interact with others and could sustain concentration and attention, notwithstanding low GAF scores.

Plaintiff next challenges the ALJ's mental RFC formulation at Step Four as it concerns both her social interaction skills and her Global Assessment of Functioning ("GAF") scores.

First, she believes the ALJ incorrectly found she was capable of occasionally interacting with coworkers and supervisors. The Court finds that the ALJ did nor err here. When asked how well she interacted with authority figures, Plaintiff responded, "Okay I guess." R. at 437. She presented with grossly intact cognition when receiving mental health care from a psychiatrist and a social worker. R. at 587, 931, 947, 1152. Psychologist Brooke Whisenhunt, Ph.D. ("Dr. Whisenhunt"), found that Plaintiff's attention and concentration were fair, concluding that she "seemed able to interact in at least minimally demanding social situations." R. at 1337–38. Kenneth Burstin, Ph.D. ("Dr. Burstin"), concluded that she was not significantly limited in her "ability to work in coordination with or proximity to others without being distracted by them." R. at 700. Alan Aram, Psy.D. ("Dr. Aram"), opined that Plaintiff "is able to relate adequately to others in

---

[1] Plaintiff objects to how the ALJ weighed the opinions of Dr. Alex, Dr. David Huntley, Dr. Michael Ball, and Nurse Eloise Unger. Because the ALJ's assessment of those opinions is consistent with the evidence above, he committed no legal error in this regard. *See Lawson*, 807 F.3d at 965.

6

Case 6:15-cv-03078-DGK   Document 11   Filed 02/08/16   Page 6 of 9

settings which do not require frequent public contact or unusually close social interaction." R. at 1141.[2]  Finally, her symptoms improved somewhat with medication and therapy.  R. at 594, 600, 679, 720; *see Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) (finding that the claimant's depression did not impose limitations because it was controllable with medication).  In other instances, Plaintiff demonstrated "[s]ignificant noncompliance" with treatment.  R. at 592, 724, 1184, 1188, 1197, 1201, 1205, 1209, 1288, 1294, 1304; *see Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.")  For all these reasons, the ALJ fairly found that Plaintiff had the RFC to occasionally interact with coworkers and supervisors.

Second, Plaintiff argues that the ALJ erred in finding she could perform simple, unskilled work that was less than "highly complex."  She acknowledges that Drs. Whisenhunt, Burstin, and Aram opined that she could sustain concentration and persistence of easy, simple, or non-complex tasks, but argues that the ALJ ignored her many GAF scores to the contrary.

In using the GAF, clinicians assign the patient a score on a 0–100 scale to represent their "judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. rev. 2000).  GAF scores may assist the ALJ in determining a claimant's level of mental functioning, but they are not dispositive. *Earnheart v. Astrue*, 484 F. App'x 73, 75 (8th Cir. 2012) ("[A] GAF score is not essential to the accuracy of an RFC determination . . . ."); *see Doolittle v. Colvin*, No. 13-CV-04261-C-DGK-SSA, 2014 WL 7369635, at *2 (W.D. Mo. Dec. 29, 2014) (explaining why GAF scores have questionable value); *cf. Pates-Fires v. Astrue*, 564 F.3d 935, 944–45 (8th Cir. 2009) (reversing

---

[2] Plaintiff argues that instead of deferring to Drs. Whisenhunt, Burstin, and Aram, the ALJ should have granted controlling weight to the opinions of Elizabeth Bhargava, M.D., Janice May, Psy.D., and Colleen Haynie, APRN, whose opinions he partially rejected.  R. at 28–29.  Because the latter three clinicians' opinions were inconsistent with their own treatment notes or with the remainder of the medical record, the ALJ fairly rejected them.  *See Bernard*, 774 F.3d at 487.

7

Case 6:15-cv-03078-DGK   Document 11   Filed 02/08/16   Page 7 of 9

an ALJ's denial of benefits in part due to his failure to discuss or consider numerous GAF scores below 50).

The record contains fifty-three GAF scores assigned to Plaintiff, ranging from 38 to 60. The ALJ was free to rely on Plaintiff's fourteen scores above 50, which indicate only moderate symptoms or moderate difficulty in social, occupational, or school functioning, and are thus consistent with the ALJ's RFC determination. Am. Psychiatric Ass'n, *supra*, at 32. These scores compose 26.4% of Plaintiff's GAF scores, which is higher than the 19.0% of above-50 scores at issue in *Pates-Fire*, where the Court of Appeals reversed the ALJ for failing to account for the 50-and-below scores. *Pates-Fires*, 564 F.3d at 944.

Ten of Plaintiff's scores were 40 or below, which indicate "[s]ome impairment in reality testing or communication"—for example, occasionally "illogical, obscure, or irrelevant" speech—or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* However, the medical evidence does not support these low scores. Tests showed that Plaintiff's memory was unimpaired, and her attention and concentration were "characterized by ability to attend and maintain focus." R. at 1289. Her speech has presented as "logical, coherent, and goal-directed." R. at 1166. The ALJ could thus give less weight to these scores. *See Jones*, 619 F.3d at 974 ("[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it.").

Considering the fourteen above-50 scores, the diminished weight the ALJ fairly gave the sub-41 scores, and the minimal probative value GAF scores carry in the first place, the ALJ reasonably rejected the remaining 41–50 scores. *Cf. Pates-Fires*, 564 F.3d at 944 (also faulting the ALJ for failing to discuss or consider the scores below 50, including ultra-low scores of 10 and 20, which was not the case here).

Therefore, the ALJ included all credible limitations in Plaintiff's mental RFC formulation. *See McGeorge*, 321 F.3d at 769.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  February 8, 2016                                  /s/ Greg Kays
                                                        GREG KAYS, CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT